# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DEAN/FOSSETT, Minors.

UNPUBLISHED
October 13, 2015

No. 326210
Wayne Circuit Court
Family Division
LC No. 12-507836-NA

Before: BORRELLO, P.J., and JANSEN and OWENS, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to MAD under MCL 712A.19b(3)(b)(*i*) (parent caused physical injury to child), (b)(*ii*) (parent had the opportunity to prevent physical injury to child), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that child will be harmed if returned to parent), and the orders terminating her parental rights to AJD, DMJF, DF, DDF, DAMD, and ZID, as well as the parental rights of the putative fathers of DF, ZID, and DAMD, under MCL 712A.19b(3)(a)(*i*) (parent is unidentifiable), (a)(*ii*) (parent has deserted the child), (c)(*i*) (condition that led to adjudication continues to exist), (c)(*ii*) (other conditions causing the child to come within the court's jurisdiction exist and have not been rectified), (g), and (j). We affirm.

## I. CONSTITUTIONAL RIGHT TO PARENT CHILDREN

Respondent argues that the trial court violated her constitutional right to parent her children when it terminated her parental rights since all that the trial court was required to do was to provide the biological fathers of the children with physical and legal custody of the children. We disagree.

Respondent was not required to take exception to the trial court's findings or decision. See MCR 2.517(A)(7). However, respondent was required to raise the issue of constitutional error in the trial court. See *In re Williams*, 286 Mich App 253, 273-274; 779 NW2d 286 (2009). Respondent failed to argue that her constitutional right to parent her children was violated when the trial court terminated her parental rights. Therefore, the issue is unpreserved. See *id*.

This Court reviews the trial court's factual findings and decision regarding the statutory grounds for termination for clear error. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "The trial court's factual findings are clearly erroneous if the evidence supports them, but [this Court is] definitely and firmly convinced that it made a mistake." *Id*. at 709-710. This Court also reviews for clear error the trial court's decision regarding the best interests of the

-1-

children. *Id*. at 713. This Court reviews an unpreserved claim of constitutional error when the error could have dictated the outcome in the case. *In re Williams*, 286 Mich App at 274. This Court reviews an unpreserved constitutional issue for plain error affecting the respondent's substantial rights. *Id*.

A natural parent to a child has a protected liberty interest " 'in the care, custody, and management' " of her child. *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009) (citation omitted). The termination procedures are designed to ensure that the parent facing termination of her parental rights receives due process. See *id*. at 93. In *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000), abrogated in part by statute on other grounds as stated in *In re Moss*, 301 Mich App 76; 836 NW2d 182 (2013), the Michigan Supreme Court held that "[o]nce the petitioner has presented clear and convincing evidence that persuades the court that at least one ground for termination is established under [MCL 712A.19b(5)], the liberty interest of the parent no longer includes the right to custody and control of the children." Therefore, respondent's constitutional right to parent her children was not violated if the trial court correctly found by clear and convincing evidence that there was a statutory ground for termination. See *id*.

## II. STATUTORY GROUNDS

Respondent abandons the issue whether there were statutory grounds for termination since she fails to argue that the trial court erred in finding that there were statutory grounds to terminate her parental rights. See *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position."). Therefore, respondent's argument fails since she does not contend that the court erred in finding statutory grounds to terminate her parental rights, and respondent's liberty interest no longer included the right to custody and control of her children once the court found statutory grounds to terminate her parental rights. See *In re Trejo*, 462 Mich at 355. However, even assuming that respondent contended that the trial court erred when it determined that there were statutory grounds to terminate her parental rights, the trial court did not err in finding that there were statutory grounds to terminate respondent's parental rights.

Although it is not clear from the referee recommendation and report which statutory grounds applied to respondent and which applied to the putative fathers, there were statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (c)(*i*), (c)(*ii*), (g), and (j). The trial court did not err in finding clear and convincing evidence that MCL 712A.19b(3)(b)(*i*) and (b)(*ii*) provided statutory grounds to terminate respondent's parental rights to MAD. MCL 712A.19b(3)(b)(*i*) provides that the court may terminate a respondent's parental rights if it finds by clear and convincing evidence that the child suffered a physical injury and "[t]he parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." MCL 712A.19b(3)(b)(*ii*) provides that the court may terminate a respondent's parental rights if it finds by clear and convincing evidence that the child suffered a physical injury and "[t]he parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home."

There was evidence presented at the termination hearing that MAD tested positive at birth for morphine, codeine, oxycodone, and hydrocodone. Respondent explained that she took pain medication in her ninth month of pregnancy. Respondent did not have a prescription for any of the drugs that were in MAD's system. Respondent also failed to provide documentation that she received prenatal care when she was pregnant with MAD. Thus, there was clear and convincing evidence that respondent caused physical injury to MAD by consuming medicine that was not prescribed to her during her pregnancy and by failing to receive prenatal care. See MCL 712A.19b(3)(b)(i). Respondent had the opportunity to prevent physical injury by refraining from taking drugs during her pregnancy and by receiving prenatal care, which she failed to do so. See MCL 712A.19b(3)(b)(ii). Furthermore, there was a reasonable likelihood that MAD would suffer from injury or abuse in the foreseeable future since respondent failed to seek treatment for a substance abuse problem and failed to comply with her service plan for the other children. Therefore, MCL 712A.19b(3)(b)(i) and (b)(ii) provided statutory grounds for termination.

The court also did not err in finding by clear and convincing evidence that MCL 712A.19b(3)(c)(i) and (c)(ii) provided statutory bases for termination of respondent's parental rights to AJD, DMJF, DF, DDF, DAMD, and ZID. MCL 712A.19b(3)(c)(i) provides that a court may terminate a respondent's parental rights if the court decides by clear and convincing evidence that 182 days or more elapsed after the court issued the first dispositional order in the case and the court finds that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

More than 182 days elapsed since the court issued the first dispositional order in the case. Additionally, the condition that led to adjudication continued to exist, and there was no reasonable likelihood that the condition would be rectified within a reasonable time. The condition that led to adjudication was the fact that respondent's home was in a deplorable condition. Marie Parker, a foster-care worker with Homes for Black Children, testified during the termination hearing that respondent failed to obtain suitable housing and was evicted from her residence in September 2014. Although respondent testified that she was living in a four-bedroom house, she failed to inform Parker of where she was living. Thus, respondent failed to adequately address the housing issue. Furthermore, there was no indication that respondent would rectify the condition within a reasonable time. DDF, DMJF, DF, DAMD, and ZID were removed from respondent on June 8, 2012. The termination hearing took place on December 9, 2014. Thus, respondent had approximately 2 ½ years to obtain suitable housing, and she failed to do so. There was no indication that respondent would find suitable housing within a reasonable time after the hearing since she failed to inform Parker of her current living situation. Therefore, termination was proper under MCL 712A.19b(3)(c)(i).

In addition, there were other conditions that caused the children to come within the court's jurisdiction. MCL 712A.19b(3)(c)(ii) provides that a court may terminate a respondent's parental rights if the court decides by clear and convincing evidence that 182 days or more elapsed after the court issued the first dispositional order in the case and the court finds that

[o]ther conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received

-3-

notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Respondent's treatment plan sought to address other conditions that also caused the children to come within the court's jurisdiction. Respondent was required to attend parenting classes, undergo a psychological evaluation, attend individual and family classes, obtain a source of income, maintain regular contact with petitioner, attend regular supervised visits with the children, and maintain suitable housing in order to address the income, parenting, and mental health conditions. See MCL 712A.2(b) (describing conditions that cause a child to come within the trial court's jurisdiction based on the conduct of the child's parent). Respondent failed to comply with her treatment plan after receiving the recommendation to rectify the conditions during the initial dispositional hearing on September 25, 2012. Respondent failed to provide documentation that she sought treatment for depression and took her prescribed medication. Respondent was withdrawn from parenting classes on two occasions for failing to participate. Respondent's parenting coach reported that respondent made improvements, but had problems redirecting the children during visitations and managing all of the children by herself. Respondent also failed to provide proof that she had a legal source of income. Respondent failed to maintain contact with Parker on a regular basis. Instead, respondent called Parker approximately once per week. Respondent also visited the children regularly only once per week out of the two scheduled visits per week. Thus, respondent failed to rectify the other conditions. As discussed above, there was not a reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages since respondent was given more than two years to rectify the conditions, and she failed to show that she rectified the other conditions. Therefore, termination was proper under MCL 712A.19b(3)(c)(*ii*).

MCL 712A.19b(3)(g) also provided a statutory basis for termination of respondent's parental rights to all of her children. MCL 712A.19b(3)(g) provides that the trial court may terminate a respondent's parental rights if the court determines by clear and convincing evidence that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." There was clear and convincing evidence that respondent failed to provide proper care and custody for her children. As discussed above, respondent failed to secure housing and a legal source of income. Respondent failed to visit the children during scheduled visits. MAD was born with morphine, codeine, oxycodone, and hydrocodone in her system. Thus, respondent failed to provide proper care and custody of the children. In addition, there was no indication that respondent would be able to provide proper care and custody within a reasonable time considering the children's ages since respondent had over two years to provide proper care and custody, and she failed to do so. Furthermore, respondent's parenting coach indicated that respondent would be unable to care for all of her children at one time, which further indicates that she could not provide proper care and custody within a reasonable time. Therefore, the trial court did not err in finding by clear and convincing evidence that MCL 712A.19b(3)(g) provided a statutory basis for termination.

Finally, there was clear and convincing evidence that MCL 712A.19b(3)(j) applies in this case. MCL 712A.19b(3)(j) provides that the trial court may terminate a respondent's parental rights if the court determines by clear and convincing evidence that "[t]here is a reasonable

likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." As discussed above, respondent failed to secure a legal source of income and adequate housing, which indicates that the children will be harmed if returned to her. Respondent also failed to provide proof that she attended mental health services, and she failed to take her prescribed medication for depression. MAD was born with morphine, codeine, oxycodone, and hydrocodone in her system, and there is no indication that respondent took steps to address any substance abuse issue. Therefore, there was a reasonable likelihood, based on the conduct or capacity of respondent, that the children would be harmed if returned to respondent's home. See MCL 712A.19b(3)(j). For all of the reasons discussed above, the trial court did not err in finding that there were statutory grounds to terminate respondent's parental rights. Accordingly, the trial court did not violate respondent's constitutional right to parent her children. See *In re Trejo*, 462 Mich at 355.

### III. BEST INTERESTS

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. The trial court weighs all of the evidence in the case to determine whether termination is in the best interests of the children. *Id.* "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' " *Id.* (citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id.* at 714.

The trial court did not err in making its best-interest determination. First, there was testimony presented at the termination hearing that respondent did not have a strong bond with her children. Parker opined that respondent was bonded with her children, but the bond was more of a friendship than a parent-child relationship. DMJF expressed that he would be sad if respondent's parental rights were terminated, but that he understood. DF no longer wished to visit with respondent, and Parker did not believe that she was bonded with respondent. Although Parker opined that DAMD is bonded with respondent, she explained that he uses visiting time to play videogames on respondent's cell phone. See *In re White*, 303 Mich App at 713. Second, respondent's parenting ability indicates that termination of her parental rights was in the best interests of the children since her parenting coach stated that respondent would not be able to parent all of her children at once. See *id.*

Third, there was testimony that termination would provide the children with permanency, stability, and finality. Respondent failed to take the necessary steps to regain custody of her children in spite of the fact that she had over two years to do so. As discussed above, there was no indication that respondent would be able to regain custody of her children within a reasonable time. See *In re White*, 303 Mich App at 713. Thus, termination would provide the children with permanency, stability, and finality. See *id.*

In addition, there was testimony that there were advantages of the placements over respondent's home and that the children were doing well in care. Parker testified that DDF no longer has anxiety and sleep problems now that she is living with her father, and her grades have improved. DMJF was also doing well in school while living with his father after a brief period in which he enrolled in online high school. AJD was also doing well in her placement, and she appeared to be bonded with her father. DF was doing well in her placement with a fictive kin. Furthermore, respondent failed to comply with her service plan and did not have a strong visitation history with the children. Instead, respondent only visited the children approximately one time per week out of two scheduled visitation periods per week. See *In re White*, 303 Mich App at 713-714.

Finally, there was testimony that the children in foster care were bonded with their foster families and that the foster families were willing to adopt. Parker opined that it was in DAMD's best interests for respondent's parental rights to be terminated since DAMD is bonded with his foster parent, and the foster parent would adopt him if respondent's parental rights were terminated. Parker also believed that it was in ZID's best interests to terminate respondent's parental rights since the child is bonded with his foster parent, and the foster parent would adopt him. DF was doing well in her placement with a fictive kin, and the fictive kin expressed that she would adopt DF. See *In re White*, 303 Mich App at 714.

Respondent argues in her brief on appeal that transferring custody to the fathers of the children would allow the children to live in a safe and secure environment and allow respondent to continue to visit with the children. However, the failure to terminate respondent's parental rights could have harmed the stability, permanency, and emotional well-being of the children for the reasons discussed above. In addition, respondent overlooks the fact that the fathers of DF, DAMD, and ZID were either unknown or could not be found, and the rights of the fathers of DF, DAMD, and ZID were also terminated. For the reasons stated above, respondent's argument fails. See *In re White*, 303 Mich App at 713.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kathleen Jansen
/s/ Donald S. Owens